# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**SUNG HO MO AND DAE SHIM,**

    **Plaintiffs,**

    v.

**HSBC BANK USA, NATIONAL ASSOCIATION and WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-11,**

    **Defendants.**

Civ. No. 20-02529 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Plaintiffs Sung Ho Mo and Dae Shim have a mortgage owned by HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-11 ("HSBC as Trustee for Wells Fargo"). HSBC Bank USA ("HSBC") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants") brought a foreclosure action in New Jersey state court. In this Court, Plaintiffs sue Defendants, asserting contract and consumer-protection claims arising from Defendants' actions that allegedly led to Plaintiffs' default. In this action, Defendants move for judgment on the pleadings, arguing that the *Colorado River* abstention doctrine counsels against this Court's exercise of jurisdiction over the case, and that, in any event, Plaintiffs fail to state a claim, *see* Fed. R. Civ. P. 12(c). (DE 39.)[1]

---

[1]     Certain citations to the record are abbreviated as follows:

    "DE" refers to the docket entry numbers in this case

    "Am. Compl." refers to the Amended Complaint (DE 27)

    "Defs. Mot." refers to Defendants' Brief in Support of their Motion for Judgment on the Pleadings (DE 39-1)

For the following reasons, the motion is denied insofar as to *Colorado River* abstention, but granted as to failure to state a claim, but without prejudice to Plaintiffs' submission of a second amended complaint, which they have already sought to do in response to this motion. Other, miscellaneous relief is denied as moot in light of the dismissal

## I. BACKGROUND

Plaintiffs Mo and Shim, husband and wife, bought real property located in Totowa, New Jersey in November 2006 with the aid of a mortgage from Bank of New York Mortgage Company, LLC ("BNY"). (Am. Compl. ¶¶ 18-20; Defs. Mot. at 3; DE 34-1, -2.) In 2011, BNY assigned the mortgage to HSBC as Trustee for Wells Fargo. (Am. Compl. ¶ 19; Defs. Mot. at 3; DE 34-3.) Shim executed a loan modification agreement on March 12, 2012.[2] (Am. Compl. ¶ 20; Defs. Mot. at 3; DE 34-4.) In May 2014, Mo noticed that a mortgage payment "had not been processed or debited from his bank account," so he contacted Defendants (the Amended Complaint does not specify which). (Am. Compl. ¶¶ 22-23.) Though the Amended Complaint does not detail Defendants' response to Mo's inquiry, it alleges that in July 2014, Defendants called Mo to request a payment of $2,495.39 "without explanation" and soon began to "unilaterally" demand further payments of up to $3,969.79. (*Id.* ¶¶ 23-25.) Mo alleges that he complied with these requests and made payments from February to June 2015, after which Defendants "suddenly and without explanation" stopped accepting Mo's payments. (*Id.* ¶¶ 27-31.)

Defendants have a different version. They allege that Plaintiffs failed to make timely payments between May 2014 and June 2015, resulting in default. (Defs. Mot. at 3.) After informing Wells Fargo of difficulties in making mortgage payments, Shim was approved for a temporary repayment plan ("TRP") in

---

"Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings (DE 41)

[2]   Plaintiffs' amended complaint alleges that Mo executed this loan modification agreement "through" Shim but does not provide further detail. (Am. Compl. ¶ 20.)

2

February 2015, requiring her to make six monthly payments of $3,969.79 between March and August 2015. (*Id.* at 4; DE 34-15.) She made only three of these payments and so, in July 2015, Wells Fargo advised her that the TRP was no longer in effect. (Defs. Mot. at 4.)

In March 2016, HSBC as Trustee for Wells Fargo commenced a foreclosure proceeding in New Jersey Superior Court. (*Id.*; DE 34-5.) In July 2017, the state court granted summary judgment against Mo and Shim and in September 2017, denied their motion for reconsideration. (Defs. Mot. at 4; DE 34-6, -7.) Upon Mo and Shim's motion, the court allowed them to enter the state mediation program but their application in mediation for an additional loan modification was eventually denied. (Defs. Mot. at 5; DE 34-8.) In August 2018, HSBC as Trustee for Wells Fargo filed a motion for final judgment that was withdrawn in March 2020 pursuant to the moratorium on final foreclosure judgments in response to the COVID-19 pandemic. (Defs. Mot. at 5; DE 34-13.) Since then, Mo and Shim have filed a motion for reconsideration to stay proceedings in the foreclosure action and a motion to dismiss the foreclosure complaint, both of which remain pending. (Defs. Mot. at 6, Ex. 1-2.)

In March 2020, Plaintiffs filed this case. (DE 1.) In an Amended Complaint, Plaintiffs assert claims for (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 to -226; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) violation of the Real Estate Settlement Procedures Act ("RESPA"), as implemented by 12 C.F.R. § 1024.41. (Am. Compl. ¶¶ 40-84.) Defendants Wells Fargo and HSBC move for judgment on the pleadings. (Defs. Mot.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(c) provides for judgment on the pleadings after the pleadings have been closed. A motion for judgment on the pleadings will be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most

favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-263 (3d Cir. 2008) (internal citations omitted). For present purposes, the standards governing a Rule 12(c) motion and a Rule 12(b)(6) motion are similar. *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

On such a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

For claims sounding in fraud, Fed. R. Civ. P. 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) thus requires a complaint to state the circumstances of an alleged fraud with "sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation marks omitted).

### III. DISCUSSION

Defendants argue for dismissal because (1) the *Colorado River* abstention doctrine counsels in favor of this court's refraining from exercising jurisdiction over this case; and (2) the Amended Complaint fails to state a claim.

#### A. *Colorado River* Abstention Doctrine

In *Colorado River Water Conservation Dist. v. United States*, the Supreme Court held that despite the federal courts' "virtually unflagging obligation" to

exercise the jurisdiction given to them by Congress, there are a few "exceptional circumstances" in which federal courts can abstain from exercising jurisdiction when there are parallel state proceedings. 424 U.S. 800, 817 (1976). The *Colorado River* abstention doctrine applies "where the presence of concurrent state proceedings may indicate that a district court should abstain from the 'contemporaneous exercise of concurrent jurisdiction[ ]' due to principles of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 n.10 (3d Cir. 2017) (quoting *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83-84 (3d Cir. 2011)) (alterations in original). The Third Circuit has delineated a framework for *Colorado River* abstention analysis:

> The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. . . .
>
> In determining whether an action presents "extraordinary circumstances" we consider six factors: "(1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." The balancing of factors is "heavily weighted in favor of the exercise of jurisdiction."

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307-08 (3d Cir. 2009) (internal citations omitted) (footnote omitted).

This case indeed parallels the foreclosure action between the parties in state court. Both cases concern the same property and mortgage. In both cases, Plaintiffs have alleged Defendants' (1) violation of the NJFCA; (2) breach

of contract; (3) breach of the covenant of good faith and fair dealing; and (4) violation of RESPA as implemented by 12 C.F.R. § 1024.41. (*Compare* Am. Compl. ¶¶ 40-84 *with* Defs. Mot. Ex. 1 at 2, 4-5, 6-11 *and* Ex. 2 at 5-6.) In sum, this case presents "substantially identical claims [and] nearly identical allegations and issues" as those in the state foreclosure action, bringing it within the ambit of the *Colorado River* abstention doctrine.

      Here the factors guiding abstention point squarely to the superiority of the state forum for this case, but they must be balanced against the federal courts' "heavy obligation to exercise jurisdiction." *Colorado River*, 424 U.S. at 818. Factors one and four, both concerned with the first court to take jurisdiction over the case, support abstention: the foreclosure action was filed in March 2016 in state court while this federal action commenced in March 2020, nearly three years after the state trial court had already granted summary judgment in favor of HSBC as Trustee of Wells Fargo (though final judgment of foreclosure has not been entered). *See Nationwide,* 571 F.3d at 309 (noting the importance under factor four of the "comparative progress" of the state and federal cases); see *also Colorado River*, 424 U.S. at 819-20 (noting that "the rule requiring that jurisdiction be yielded to the court first acquiring control of property" is intended to avoid "the generation of additional litigation through permitting inconsistent dispositions of property"). Under factor three, the danger of piecemeal litigation certainly exists where, as here, extensive proceedings on the claims at issue have already been held in the parallel state case, but such risk can likely be mitigated through "[a]pplication of ordinary principles of res judicata." *Hartford Ins. Co. of the Midwest v. Dana Transp. Inc.*, No. 16-CV-9091-KM-JBC, 2018 WL 10152321, at *8 (D.N.J. May 21, 2018) ("[T]he concern with piecemeal litigation arises primarily where parallel lawsuits pose a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." (quoting 32A Am. Jur. 2d, Federal Courts § 1061 (2018))). Moreover, under factor five, Plaintiffs' claims predominantly assert matters of state law, resting federal question jurisdiction solely on

Defendants' alleged violation of 12 C.F.R. § 1024.41, a claim that has also been presented to the state court, (*See, e.g.*, Defs. Mot. Ex. 2 at 5-6.).[3] *But cf. Ryan v. Johnson*, 115 F.3d 193, 199 (3d Cir. 1997) ("[W]hile the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law").

While these factors evidently suggest that the state foreclosure suit is the superior forum for this dispute, they nonetheless do not provide the "clearest of justifications" for declining jurisdiction here. *Colorado River*, 424 U.S. at 819. Keeping in mind that this inquiry is "heavily weighted in favor of the exercise of jurisdiction," *Nationwide,* 571 F.3d at 308, I will not accept Defendants' invitation to abstain from exercising jurisdiction pursuant to *Colorado River*. Rather, I will maintain jurisdiction over the suit.

## B. Failure to State a Claim/Request for Discovery

For reasons of procedural history and case management that will become clear, I devote minimal discussion to the current motion for judgment on the pleadings.

As noted, Defendants did not immediately move to dismiss, but answered the complaint, attaching some 21 evidentiary exhibits, and moved shortly

---

[3]   The remaining factors are more neutral: the filings in the case provide no reason to believe that the federal forum poses an inconvenience for the parties under factor two, and the concern for whether the state court adequately protects the parties' interests under factor six is of minimal import for the analysis where, as here, the state court is a fully adequate forum. *See Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999) ("[T]he question [of] whether parties' interests are protected is only relevant when they are not; that is, 'when the state court is adequate, . . . [this] factor carries little weight'" (quoting *Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997)).

A possible wild card here might have been the state's COVID-related moratorium on certain evictions, including those related to foreclosures. It was that moratorium which caused Defendants here to withdraw their 2020 motion for entry of a final judgment of foreclosure following the state court's grant of summary judgment in their favor. Effective November 15, 2021, however, it appears that the moratorium, insofar as it would affect this case, has been lifted. *See* N.J. Exec. Order No. 249, decretal ¶4 (Aug. 4, 2021).

thereafter for judgment on the pleadings. (DE 9, 11) Plaintiffs were permitted to amend their complaint in response. (*See* Am. Compl.) Then followed an irregular series of letters from the Plaintiffs purporting to add new facts, allegations, and exhibits, which the Magistrate Judge declined to accept. (*See* DE 28, 29, 32, 35) Defendants filed an answer to the amended complaint (DE 34). Shortly thereafter, Defendants again moved for judgment on the pleadings (DE 39), Plaintiffs filed an opposition (DE 41), and Defendants filed a reply (DE 43). I permitted Plaintiffs to file a surreply. (DE 49, 50) Plaintiffs then filed two motions to further amend their complaint, which were denied for noncompliance with the local rules. (DE 51, 52, 56, 57) In the same time frame, and thereafter, Plaintiffs filed requests to submit further surreplies, together with voluminous evidentiary submissions (DE 53, 54, 58, 60, 61). And now, plaintiff seeks further discovery in aid of summary judgment.[4] (DE 65)

      These parties offer conflicting versions of the facts, to the point that Plaintiffs characterize certain of Defendants' exhibits as "forgeries." (*See* pp. 1–2, *supra.*) What is more, they have been at it for years in state court, as noted in the preceding discussion of *Colorado River*. (*See* pp. 2–3, 6, *supra.*) Apparently, a state judge was not persuaded by Plaintiffs' positions, as he entered summary judgment against them, although Plaintiffs have filed a motion claiming that this was procedurally unfair. On the motion for judgment on the pleadings, both sides have submitted extensive exhibits. I am loath to exercise my discretion to pick and choose those which properly be considered, because both the documents themselves and their surrounding circumstances may require analysis exceeding what is appropriate on a motion to dismiss.[5]

---

[4]    His references to the pending motion for "summary judgment" appear to relate to the motion for judgment on the pleadings.

[5]    The court may consider certain documents in connection with a motion to dismiss, if they are integral to the complaint and not disputed. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]") (emphasis and

All of which is to say that these matters are likely to be resolved pretrial, if at all, on summary judgment. Indeed, the motion for judgment on the pleadings appears to be a summary judgment motion in all but name.

In the meantime, however, I have before me an amended complaint with some apparent flaws. That said, Plaintiffs themselves have already sought to further amend it in response to Defendants' motion. Accordingly, I will briefly discuss the motion for judgment on the pleadings, based on the face of the pleadings, and grant leave to file a second amended complaint.

### 1. New Jersey Consumer Fraud Act

The NJCFA is a consumer-protection statute prohibiting enumerated unlawful practices "in connection with the sale or advertisement of any merchandise or real estate." *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013). Claims under the NJFCA are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), and thus must be stated with "sufficient particularity to place the defendant[s] on notice of the precise misconduct with which [they are] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200, 202-03 (3d Cir. 2007) (internal quotation marks omitted). Moreover, "[t]o state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Id.* at 202 (3d Cir. 2007) (citation omitted). A plaintiff must plead that he or she "has suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (2009) (alteration in original).

Plaintiffs here fail to allege with sufficient particularity that Defendants engaged in an unlawful practice or that such a practice caused "the loss of Plaintiff's property by judgment" (Am. Compl. ¶ 42), even assuming that the

---

citations omitted). For the reasons expressed above, I find it inadvisable to do so here, particularly where plaintiff is disputing the authenticity or significance of the loan documents.

9

summary judgment in the state foreclosure action and any resulting final judgment of foreclosure would constitute an "ascertainable loss." *See Frederico*, 507 F.3d at 202-03. The grounds for the state court's summary judgment do not appear on the face of the pleadings, and it is speculative to state that the various acts attributed to the Defendants in connection with administration of the loan *caused* the entry of summary judgment. Indeed, it stands to reason that the state court must have either rejected these factual contentions as unsupported, or concluded that they did not bar foreclosure as a matter of law. If that were not enough, Plaintiffs do not identify who, or even which Defendant, allegedly misled them. Such a skeletal level of detail is simply insufficient to successfully meet the standards of Rule 9(b).

For these reasons, Count 1 will be dismissed, albeit without prejudice to amendment. Plaintiffs' second amended complaint, to the extent it does not already do so, should address the matters raised here.

### 2. Breach of Contract

Plaintiffs allege that Defendants "breached Shim's March 12, 2013 Loan Modification agreement and failed to perform in accordance with those terms." (Am. Compl. ¶ 60.) A New Jersey breach of contract claim requires "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Atl. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citation omitted). "A plaintiff must identify the specific contract or provision that was allegedly breached." *Barker v. Our Lady of Mt. Carmel Sch.*, Civ. No. 12-4308, 2016 WL 4571388, at *15 (D.N.J. Sept. 1, 2016).

Plaintiffs' Amended Complaint does not identify any specific part of the loan modification agreement as the source of the alleged breach and makes no mention of Shim's TRP with Wells Fargo in February 2015. In their Opposition to this motion (but not in their amended complaint), Plaintiffs state that the breach relates to the TRP, but that the TRP was an oral, not written,

agreement. The document submitted by Defendants indicating that Shim was approved for a TRP (DE 34-15), they say, is "fraudulent," a "forgery," and "falsely drafted for the purpose of this litigation" (Opp. at 9). Plaintiffs allege various other forms of misconduct as well. They still have not, however, identified how, exactly, the loan modification agreement was breached. Nor have they identified or described with any specificity the supposed oral TRP—they proffer no facts about offer, acceptance, or terms. Their Amended Complaint states simply that Defendants breached the loan modification agreement by "chang[ing] the payment amount" and "claim[ing] missing payments." (Am. Compl. ¶ 60.)[6]

Count 2 will be dismissed, likewise without prejudice. Any second amended complaint should address the matters raised here.

### 3. Breach of the Covenant of Good Faith and Fair Dealing

"Every contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). Plaintiffs allege in a conclusory fashion that "Defendants acted with bad motives or intentions to cause Plaintiffs into a default and engaged in deception or evasion in the performance of contract by this default." (Am. Compl. ¶ 68.) But bare allegations that Defendants acted in bad faith are insufficient, even for *pro se* plaintiffs. *Mehnert v. U.S. Bank Nat'l Ass'n*, Civ. No. 17-4985, 2018 WL 1942523, at *8 (D.N.J. Apr. 23, 2018). They must allege that they were wrongly deprived of the benefits of the contract. More fundamentally, any claim

---

[6]  Moreover, as already stated, Plaintiffs impermissibly allege their claim against all Defendants without alleging how they all can be liable. *See Integrated Micro-Chip Elecs. Mex. v. Lantek Corp.*, Civ. No. 18-14112, 2019 WL 4668036, at *2 (D.N.J. Sept. 24, 2019) (Rule 8 requires more than "group pleading" for a breach of contract claim (citation omitted)). The role of each should be clarified to the extent possible.

of breach of the implied covenant must await clarification of what, precisely, the contract consisted of. (*See* subsection 3, immediately preceding.)

For those reasons, Count 3 will be dismissed, again without prejudice to amendment.

### 4. RESPA

RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). Plaintiffs specifically allege a violation of 12 C.F.R. § 1024.35 and § 1024.41, regulations implementing RESPA that require mortgage servicers to promptly review "loss mitigation applications," respond to written notices from borrowers asserting error, and to provide notice and an explanation of denials before a foreclosure. Plaintiffs allege that they "submitted over six (6) loan modification applications" (a term they appear to use interchangeably with loss mitigation applications), and that Defendants issued baseless "blanket" rejections without due consideration. (Am. Compl. ¶¶ 34, 38, 54-55, 77, 83.)

A claim that Defendants responded, but only in "blanket" fashion, is a problematic RESPA allegation. More problematic for Plaintiffs is the requirement that a RESPA violation caused actual damages. *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016). Plaintiffs here plead no more than a bare violation (if that). As to any specific injury caused to them, they simply allege that they "have been damaged." (Am. Compl. ¶ 83.) They have not "specifically identified the problem" created by the violation or "specifically identified the harm" created thereby. *Giordano*, 160 F. Supp. 3d at 783. Accordingly, a RESPA claim is not plausibly alleged.

For these reasons, Count 4 will be dismissed, again without prejudice.

### C. Defendant's Requests to File a Sur-reply and for Discovery

Finally, I turn to Plaintiffs' requests to file a sur-reply and for discovery. In light of the dismissal of the complaint without prejudice, these requests are denied as moot. Any further arguments in reply or further factual contentions

may be addressed in connection with any amended pleading or subsequent motion for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, the motion for judgment on the pleadings is **GRANTED**. Additionally, Plaintiffs' requests to file a sur-reply and for discovery are **DENIED** as moot.

The dismissal is without prejudice to the filing, within 60 days, of a second amended complaint. Defendants may then opt to answer or move in response, or may save their contentions for a motion for summary judgment. Defendants' counsel shall periodically update the Court as to progress in the state foreclosure action, and shall supply to the Court a copy of any written or oral decision accompanying the state court's summary judgment order. Discovery is not stayed in the interim.

A separate order will issue.

Dated:  December 30, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**

13